## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

SHONAZAROV FARUKHRUZ,

                Petitioner,

v.

ANTONE MONIZ, Superintendent of Plymouth
County Correctional Facility,

                Respondent.

Civil Action No. 1:25-CV-10304-MJJ

## RESPONDENT'S MEMORANDUM IN OPPOSITION TO PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C § 2241

      Respondent Antone Moniz ("Respondent"), Superintendent of the Plymouth County Correctional Facility ("PCCF"), by and through his attorney, Leah B. Foley, United States Attorney for the District of Massachusetts, respectfully submits this opposition to Farukhruz Shonazarov's ("Petitioner") Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (the "Petition"). Doc. No. 1. Respondent responds to the Petition as contemplated by Rules 4 and 5 of the Federal Rules Governing Section 2254 cases and in accordance with the Court's Service Order.[1] Doc. No. 7.

## INTRODUCTION

      Petitioner's detention by U.S. Immigration and Customs Enforcement ("ICE") is fully supported by the Immigration and Nationality Act ("INA"), its implementing regulations, and the

---

[1] *See* Rule 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition…"); *Vieira v. Moniz*, No. CV 19-12577-PBS, 2020 WL 488552, at *1 n.1 (D. Mass. Jan. 30, 2020) (evaluating the Government's response and dismissing habeas petition under Section 2254 Rules).

Constitution.  Petitioner is a native of Tajikistan who applied for admission to the United States but was determined to be inadmissible by U.S. Customs and Border Protection ("CBP").  *See* Declaration of Assistant Field Office Director, Keith Chan ("Chan Decl.") ¶ 7, attached as Exhibit 1.  CBP attempted to proceed with Petitioner's expedited removal from the United States as authorized by statute, but Petitioner expressed an intention to seek asylum.  *Id.*.  As required, Petitioner's removal was halted so he could interview with an Asylum Officer to consider his claim of fear, and he was eventually entered into removal proceedings in Immigration Court to seek asylum.  *Id.*, ¶¶ 7-8.  Since that time, an Immigration Judge ("IJ") denied Petitioner's asylum application ordered him removed.  *Id.*, ¶ 16.  His appeal of such order is pending with the Board of Immigration Appeals ("BIA").  *Id.*, ¶¶ 17, 19.

Petitioner's claim that his detention is unlawful is without merit.  Pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii), ICE is required to detain Petitioner without access to a bond hearing during his removal proceedings.  *See Jennings v. Rodriguez,* 583 U.S. 281, 297 (2018) (Explaining that detention under Section 1225(b) must continue until removal proceedings end and nothing in the statute "says anything whatsoever about bond hearings.").  His constitutional claim fails as the Supreme Court has made clear that the detention of applicants for admission, such as Petitioner, is constitutional and such aliens are entitled only to the process provided by statute.  *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("*Mezei*").  Even if Petitioner could plead a claim for more protections than the statute affords him, he has failed to show that he is entitled to a bond hearing as resolution of his removal proceedings is readily foreseeable.

As such, this Court should not order his release or that he receive a bond hearing.

## BACKGROUND

**A.  Legal Background for Aliens Seeking Admission to the United States**

The Supreme Court has long recognized that Congress exercises "plenary power to make rules for the admission of foreign nationals and to exclude those who possess those characteristics which Congress has forbidden."  *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972).  Pursuant to that longstanding doctrine, "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative."  *Landon v. Plasencia*, 459 U.S. 21, 32 (1982).

Arriving aliens applying for admission at the border thus lack any constitutional due process rights with respect to admission: "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned," *Mezei*, 345 U.S. at 212, and "it is not within the province of any court, unless expressly authorized by law, to review [that] determination".  *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950).  The Supreme Court reaffirmed "[its] century-old rule regarding the due process rights of an alien seeking initial entry" in *Dep't of Homeland Sec. v. Thuraissigiam*, explaining that an individual who was an applicant for admission—like Petitioner— "has only those rights regarding admission that Congress has provided by statute."  591 U.S. 103, 139-40 (2020).

By statute, ICE is mandated to detain Petitioner while he seeks asylum and there is no provision allowing for a bond hearing to contest detention.  Instead, per statute, Petitioner can ask ICE to exercise its discretion to parole him from its custody.

**1.  Detention of Foreign Nationals Seeking Admission into the United States**

In exercising its plenary power over immigration, Congress has delegated to the Secretary of Homeland Security the responsibility for "[s]ecuring the borders," enforcing the

3

immigration laws, and "control[ling] and guard[ing] the boundaries and borders of the United States against the illegal entry of aliens."  6 U.S.C. §§ 202(2) & (3); 8 U.S.C. § 1103(a)(5). Relevant here, aliens seeking admission to the United States at ports of entry are subject to inspection by a CBP officer and carry the burden of demonstrating their admissibility into the United States.  *See* 8 U.S.C. § 1225(a)(3); 8 C.F.R. § 235.1(f).  After arriving at a port of entry, CBP officers inspect each alien requesting admission under 8 U.S.C. § 1225.  The officer will determine if an inadmissibility ground under 8 U.S.C. § 1182 is applicable.  The term "admission" is defined by the INA to mean "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A); *see also* 8 C.F.R. § 1235.1 (setting forth inspection procedures).  An alien who is seeking admission is known as "an applicant for admission." 8 U.S.C. § 1225(a)(1).

In the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104208, Tit. III, § 302(a), 110 Stat. 3009-579, Congress amended Section 1225(b) to add "expedited removal" procedures to "streamline[] rules and procedures . . . to make it easier to deny admission to inadmissible aliens," while ensuring that there is "no danger that an alien with a genuine asylum claim will be returned to persecution."  H.R. Rep. No. 469, 104th Cong., 2d Sess. Pt. 1, at 157–58 (1996) (House Report).  After IIRIRA, Section 1225(b) provides that, if an immigration officer determines that an alien "who is arriving in the United States" lacks valid documents or is inadmissible due to fraud, the officer "shall order the alien removed from the United States without further hearing." 8 U.S.C. 1225(b)(1)(A)(i); *see* 8 U.S.C. §§ 1182(a)(6)(C) & (7).

If the alien indicates an intention to apply for asylum or expresses a fear of persecution or torture, an asylum officer determines whether the potential applicant has a credible fear.  *See* 8

U.S.C. §§ 1225(b)(1)(A)(ii) & (B); 8 C.F.R. §§ 208.30, 235.3(b)(4). The alien "shall be detained pending a final determination of credible fear of persecution." 8 U.S.C. 1225(b)(1)(B)(iii)(IV). As explained by the Supreme Court, "[a]n alien subject to expedited removal thus has an opportunity at three levels to obtain an asylum hearing, and the applicant will obtain one unless the asylum officer, a supervisor, and an immigration judge all find that the applicant has not asserted a credible fear." *Thuraissigiam*, 591 U.S. at 110. Such individual, however, "is not entitled to immediate release" regardless of whether their asylum claim is reviewed fully or in an expedited manner. *Id.* at 111. The Supreme Court has confirmed that this statutory mandate extends for the entirety of removal proceedings. *Jennings*, 583 U.S. at 302 ("[Section] 1225(b)(1) . . . mandate[s] detention of aliens *throughout the completion of applicable proceedings* and not just until the moment those proceedings begin." (emphasis added)).

An IJ "may not" conduct a bond hearing to determine whether an applicant for admission should be released into the United States during removal proceedings. 8 C.F.R. § 1003.19(h)(2)(i)(B) ("[A]n immigration judge may not redetermine conditions of custody imposed by the Service with respect to . . . [a]rriving aliens in removal proceedings, including aliens paroled after arrival pursuant to section 212(d)(5) of the Act."); *accord Matter of M-S-*, 27 I. & N. Dec. 509, 515 (A.G. 2019) (concluding that the statute's "text . . . mandates th[e] conclusion" that "aliens who are originally placed in expedited proceedings and then transferred to full proceedings after establishing a credible fear . . . remain ineligible for bond, whether they are arriving at the border or are apprehended in the United States").

As mentioned above, the Secretary, acting through ICE and CBP, has discretion to parole applicants for admission into the United States. *See* 8 U.S.C. § 1182(d)(5). For those detained under § 1225(b), regulations provide that ICE or CBP may grant parole if the alien is

"neither a security risk nor a risk of absconding," and (1) has a serious medical condition; (2) is pregnant; (3) falls within certain categories of juveniles; (4) will be a witness; or (5) if continued detention is otherwise "not in the public interest." 8 C.F.R. § 212.5(b); *see also* 8 C.F.R. § 235.3(c). ICE has issued guidance that elaborates on w h e n parole might b e appropriate for aliens held under § 1225(b)(1)(B)(ii) for removal proceedings. *See* U.S. Immigration and Customs Enforcement, *Parole of Arriving Aliens Found to Have a Credible Fear of Persecution, Directive No. 11002.1* (Dec. 8, 2009), *available at* https://www.ice.gov/doclib/dro/pdf/11002.1hdparole_of_arriving_aliens_found_credible_fear.df (last visited March 7, 2025).

### B. Immigration History

#### 1. Petitioner Applies for Admission to the United States

Petitioner applied for admission to the United States at the San Ysidro, California Port of Entry on October 31, 2023. Chan Decl., ¶ 7. Petitioner did not possess a valid immigrant visa or any other valid entry document and therefore CBP found him inadmissible to the United States pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(ii). *Id.* As Petitioner lacked a visa or any other documentation to enter the United States, CBP processed Petitioner for Expedited Removal per 8 U.S.C. § 1225(b)(1). *Id.* Because Petitioner expressed a fear of persecution if removed from the United States, CBP referred petitioner for an interview with an asylum officer as required by Section 1225(b)(1)(A)(ii). *Id.* U.S. Citizenship and Immigration Service's ("USCIS") Asylum Office conducted an interview with Petitioner per Section 1225(b)(2)(i) and determined that Petitioner's claim was credible. *Id.* With this determination made, on or about January 30, 2024, USCIS issued Petitioner with a Notice to Appear in Immigration Court so he could pursue his asylum application. *Id.*, ¶ 8.

Petitioner has sought parole from ICE on two occasions.  On March 22, 2024, Petitioner submitted a parole request with ICE.  *Id.*, ¶ 12.  ICE interviewed Petitioner regarding his request and declined to exercise discretion to release Petitioner on April 24, 2024.  *Id.*  Petitioner sought a redetermination of his parole request in May 2024, but ICE denied his second request for parole on May 30, 2024.  *Id.*, ¶ 13.

### 2. Petitioner's Immigration Proceedings

Petitioner first appeared in the Boston Immigration Court on February 15, 2024.  *Id.*, ¶ 9.  Petitioner requested two continuances for preparation of his asylum application and eventually filed such application on March 14, 2024.  *Id.*, ¶¶ 9-11.  The Immigration Court rescheduled Petitioner's asylum hearing on two occasions due to court congestion and an IJ eventually heard testimony in support of his application on September 3, 2024.  *Id.*, ¶¶ 14-16.  The IJ issued a denial of his asylum application on September 26, 2024.  *Id.*, ¶ 16.  Petitioner filed an appeal to the BIA on October 28, 2024.  *Id.*, ¶ 17.  Petitioner's brief in support of his appeal was due on February 5, 2025, but Petitioner filed a motion to extend the briefing schedule, which the BIA allowed to February 26, 2025.  *Id.*, ¶ 18.   Petitioner's appeal as well as a motion to remand to the Immigration Court remain pending.  *Id.*, ¶ 19.   If the BIA dismisses Petitioner's appeal, ICE will then seek to effectuate Petitioner's removal from the United States. *Id.*, ¶¶ 20-21.

### C. Procedural History

Petitioner filed this Petition on February 20, 2025 and asks the Court to order his "immediate release, or alternatively, require a bond hearing before a neutral decisionmaker to determine whether my continued detention is justified."  Doc. No. 1 at 4.  He asserts that his detention since October 31, 2023 without a bond hearing violates the Due Process Clause.  *Id.*

Petitioner claims that he has a sponsor to provide housing and other assistance, and that his continued detention is causing significant financial and emotional hardship on his spouse. *Id.*

## ARGUMENT

ICE's detention of Petitioner is authorized by statute and does not offend the Constitution—as such, this Court should deny the Petition.

### A.   Petitioner's Detention is Authorized and Mandated by Statute

Petitioner is an applicant for admission to the United States and ICE is mandated by statute to detain him during his removal proceedings without access to a bond hearing. Aliens seeking admission who are "not clearly and beyond a doubt entitled to be admitted . . . shall be detained for a proceeding" to determine whether the alien should be removed. 8 U.S.C. § 1225(b)(2)(A). Any such alien "shall" be ordered removed "without further hearing" unless he claims a credible fear or intends to apply for asylum, in which case he "shall be detained pending a final determination of credible fear;" "if found not to have such a fear, until removed;" and if found to have a credible fear, he "shall be detained for further consideration of the application for asylum." 8 U.S.C. §§ 1225(b)(1)(A)(i), (B)(ii), and (iii)(IV). But, regardless of the level of review of the asylum claim, "the applicant is not entitled to immediate release." *Thuraissigiam*, 591 U.S. at 111.

As explained by the Supreme Court in *Jennings*, these statutory provisions "mandate detention of applicants for admission until [removal] proceedings have concluded." 538 U.S. at 297. In declining to find a statutory requirement to conduct bond hearings for such applicants for admission, the Supreme Court explained that "nothing in the statutory text imposes any limit on the length of detention … and neither [statutory provision] says anything whatsoever about bond hearings." *Id.* As such, Petitioner's detention without a bond hearing or individualized

review of his continued detention is lawful pursuant to the plain language of the statute and Supreme Court precedent.

### B. Petitioner's Detention does not Violate the Constitution

As explained below, a series of Supreme Court decisions foreclose Petitioner's claim to a bond hearing pursuant to the Due Process Clause. Additionally, even if Petitioner was conceivably entitled to further review as to the constitutionality of his detention, such review would counsel against a bond hearing as his proceedings are at an advanced stage and he had the opportunity to seek parole from ICE and can do so again in the future in the event his circumstances change.

### 1. Supreme Court precedent forecloses Petitioner's request for a bond hearing

The Supreme Court recently reaffirmed a "century-old rule regarding the due process rights of an alien seeking initial entry" in *Thuraissigiam* when it explained that an applicant for admission "has only those rights regarding admission that Congress has provided by statute." 591 U.S. at 139-40. Because applicants for admission have not been admitted to the United States, their constitutional rights are truncated: "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Mezei*, 345 U.S. at 212. As such, Petitioner who is entitled to seek asylum in the Immigration Court and can apply for parole from custody with ICE, does not enjoy additional due process rights to include a bond hearing before an IJ because the statute governing his detention does not provide for such hearings. *See Jennings*, 538 U.S. at 300 ("That express exception to detention implies that there are *no other* circumstances under which aliens detained under § 1225(b) may be released." (emphasis in original)).

Further, § 1225(b) satisfies the substantive component of the Due Process Clause because detention during a removal proceeding is "a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003); *see also Reno v. Flores*, 507 U.S. 292, 306 (1993); *Carlson v. Landon*, 342 U.S. 524, 538 (1952); *Wong Wing v. United States*, 163 U.S. 228, 235 (1896). As such, his Petition must be denied.

The broad scope of the political branches' authority over immigration is "at its zenith at the international border." *United States v. Flores-Montano*, 541 U.S. 149, 152–53 (2004). Accordingly, "certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographical borders." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). As explained by the Supreme Court, "[w]hen an alien arrives at a port of entry—for example, an international airport—the alien is on U.S. soil, but the alien is not considered to have entered the country …". *Thuraissigiam*, 591 U.S. at 139. Stated further, "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" *Id.* (quoting *Mezei*, 345 U.S. at 215). Applying the "century-old rule regarding the due process rights of an alien seeking initial entry[,]" the Court explained that such aliens have "only those rights regarding admission that Congress has provided by statute." *Id.* at 139-40.

As such, applicants for admission may be detained without a bond hearing pending admission or removal without running afoul of the Constitution. In *Mezei*, for example, the Supreme Court held that a returning lawful permanent resident's detention at the border without a hearing to effectuate his exclusion from the United States did not violate due process. *Mezei*, 345 U.S. at 206. Specifically, Mr. Mezei arrived at Ellis Island seeking admission into the United States. *See id.* And even though he had resided in the United States previously, he had

since been "permanently excluded from the United States on security grounds." *Id.* at 207. As a result, his home country would not accept him, and he had been detained for more than a year to effectuate his exclusion when he filed his habeas petition. *Id.* at 207–08. The Supreme Court held that Mr. Mezei's detention did not "deprive[ ] him of any statutory or constitutional right." *Id.* at 215. Instead, the Court reiterated that "the power to expel or exclude aliens" is a "fundamental sovereign attribute exercised by the Government's political departments" that is "largely immune from judicial control." *Id.* at 210. The Court recognized that "once passed through our gates, even illegally," aliens "may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Id.* at 212. But "an alien on the threshold of initial entry stands on a different footing" than an alien who has effected an entry into the United States. *Id.*

The Supreme Court's decision in *Thuraissigiam* reinforces *Mezei*'s holding. In relevant part, *Thuraissigiam* concerned a due process challenge raised by an alien apprehended 25 yards from the border, which he crossed illegally. 591 U.S. at 139. Like Petitioner, DHS detained and processed him for expedited removal because he lacked valid entry documents. *See id.* at 1967. But unlike Petitioner, an asylum officer determined that Mr. Thuraissigiam lacked a credible fear of persecution. *Id*. at 114. Mr. Thuraissigiam petitioned for a writ of habeas corpus, asserting a fear of persecution and requesting another opportunity to apply for asylum. *See id.*

Although *Thuraissigiam* did not principally feature prolonged detention claims, the Supreme Court delineated the boundaries of due process claims that can be made by applicants for admission. Specifically, the Court held that for such aliens stopped at the border, "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law." *Id.* at 131 (citing *Nishimura Ekiu v. United States*, 142 U.S.

11

651, 660 (1892)); *see also Guerrier v. Garland*, 18 F.4th 304, 313 (9th Cir. 2021) ("In concluding that Thuraissigiam's due process rights were not violated, the Supreme Court emphasized that the due process rights of noncitizens who have not 'effected an entry' into the country are coextensive with the statutory rights Congress provides."). In reaching this conclusion, *Thuraissigiam* cited *Mezei* authoritatively, *see* 591 U.S. at 139, because of the basic distinction between aliens already "present" in the United States and those who stand at the "threshold of entry," *Mezei*, 345 U.S. at 208, 214.

Petitioner fails to address the Supreme Court decisions that govern this case and foreclose the relief he seeks: *Mezei* and *Thuraissigiam*. In seeking a bond hearing to remedy an alleged due process violation, Petitioner ignores *Mezei*'s holding, reaffirmed in *Thuraissigiam*, that "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." 345 U.S. at 212. Here, Section 1225(b) makes plain that applicants for admission who are "not clearly and beyond a doubt entitled to be admitted . . . *shall be detained*" for removal proceedings. 8 U.S.C. § 1225(b)(2)(A) (emphasis added). As such, Petitioner is not entitled to a bond hearing because "an alien in [Petitioner's] position has only those rights regarding admission that Congress has provided by statute." *Thuraissigiam*, 591 U.S. at 140.

### 2.  District courts routinely deny similar requests for bond hearings

While the U.S. Court of Appeals for the First Circuit and this District Court have not analyzed the constitutionality of detention for applicants for admission, numerous other courts have recently determined that detention of such aliens passes constitutional muster in accordance with the century-old rule regarding the due process rights of an alien seeking initial entry examined in *Mezei* and reaffirmed in *Thuraissigiam*.

For example, in *Poonjani v. Shanahan*, 319 F. Supp. 3d 644, 647-49 (S.D.N.Y. 2018) the court held that *Mezei* "is directly on point and controls this case" and that "because the immigration statues at issue here do not authorize a bond hearing, *Mezei* dictates that due process does not require one here."  *See also Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 145 (D.D.C. 2018) (Explaining that *Mezei* remains "good law, and it dictates that for an alien who has not effected an entry into the United States" the statutory scheme is "due process as far as an alien denied entry is concerned."); *Mendez Ramirez v. Decker*, 612 F. Supp. 3d 200, 219 (S.D.N.Y. 2020) (Finding itself bound to apply *Mezei* in holding that alien's "detention does not violate due process because Congress has authorized mandatory detention for immigrants in [his] circumstances and that is sufficient to satisfy due process."); *Gonzalez Aguilar v. Wolf*, 448 F. Supp. 3d 1202, 1212 (D. N.M. 2020) (*"Mezei* and its progeny do not hold that [p]etitioner has no due-process rights; rather, the applicable statutory process shapes her procedural due process rights.  Because [p]etitioner has no statutory right to release or a bond hearing … she has no due-process right to the relief requested."); *Aslanturk v. Hott,* 459 F. Supp. 3d 681, 694 (E.D. Va. 2020) (Declining to "ignore binding, Supreme Court precedent" to award an applicant for admission a bond hearing since Section 1225(b) does not provide for such hearing.).

Other courts have held similarly, especially after the Supreme Court in *Thuraissigiam* reaffirmed its rule regarding the due process rights of applicants for admission.  *See e.g.*, *Petgrave v. Aleman*, 529 F. Supp. 3d 665, 679 (S.D. Tex. 2021) (Explaining that "whatever procedure Congress has authorized is sufficient due process. … Accordingly, [p]etitioner's request for immediate release or, in the alternative, for a bond hearing before the Court is denied."); *St. Charles v. Barr*, 514 F. Supp. 3d 570, 579 (W.D.N.Y. 2021) (Denying habeas petition seeking a release or a bond hearing finding that "he does not have a constitutional right

to any additional procedure."); *Rodriguez Figueroa v. Garland*, 535 F. Supp. 3d 122, 126-28 (W.D.N.Y. 2021) (Finding no procedural or substantive due process violation for an alien pursuing withholding-only proceedings based upon Supreme Court's *Thuraissigiam* decision.").

As such, this Court should apply the "century-old rule" reaffirmed in *Thuraissigiam* and conclude that Petitioner's due process rights are coextensive with the rights provided him under statute.  In § 1225(b) and the INA's related regulatory provisions, Congress has afforded arriving aliens a variety of protections, but excluded the possibility of bond hearings.  Consequently, because Petitioner's statutory rights do not extend to a bond hearing, the Court should deny his request for release or a bond hearing.  Instead, the exclusive means of release for an applicant for admission is ICE's discretionary parole authority.  Here, Petitioner has twice requested ICE parole him from custody, but ICE has declined to accede to his requests.  As explained by another district court, the opportunity for parole "satisfies due process" for arriving aliens "because (1) they are situated differently than individuals within our borders, and (2) the period of detention during such a proceeding is not indefinite—it will end upon the conclusion of the removal proceeding."  *Alexandre v. Decker*, No. 17CIV5706GBDKHP, 2019 WL 1407353, at *5 (S.D.N.Y. Mar. 28, 2019).  For these reasons, Petitioner's request for release or a bond hearing should be denied.

### 3.  Even assuming further review of Petitioner's detention is warranted, no bond hearing is warranted

Respondent acknowledges that some district courts have declined to follow the Supreme Court's decisions in *Mezei* and *Thuraissigiam* and have determined that further analysis is warranted to determine if an applicant for admission is entitled to a bond hearing under the Constitution.  *See e.g.*, *Pierre v. Doll*, 350 F. Supp. 3d 327, 331 (M.D. Pa. 2018) (Holding that arriving aliens "have a due process right to an individualized bond consideration once it is

determined that the duration of their detention has become unreasonable."); *Bermudez Paiz v. Decker*, No. 18CV4759GHWBCM, 2018 WL 6928794, at *7 (S.D.N.Y. Dec. 27, 2018) (same).

Respondent respectfully argues that such decisions were wrongly decided as they failed to comport with the "century-old rule" reaffirmed in *Thuraissigiam* that an applicant for admission's due process rights are coextensive with the rights provided him under statute. Respondent does not argue that an applicant for admission such as Petitioner does not have any due process rights, but Supreme Court precedent does firmly stand for the proposition that an alien who has not entered the United States is only entitled to the protections provided for by Congress. The Supreme Court reaffirmed this longstanding precept in *Thuraissigiam* when it explained that "[w]hile aliens who have established connections in this country have due process rights in deportation proceedings, the Court long ago held that Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause." 591 U.S. at 107.

Nonetheless, even if Petitioner's detention is reviewed further, such review leads to the conclusion that the duration of his detention has not become unreasonably prolonged and no bond hearing is warranted, especially because Petitioner's removal proceedings are at an advanced stage and he does not face indefinite detention. When addressing the constitutionality of mandatory detention during removal proceedings of aliens who had already entered the United States and were detained under 8 U.S.C. § 1226(c), the Supreme Court has held that bond hearings are not constitutionally required because the detention has a definite termination point. *Demore v. Kim*, 538 U.S. 510, 527-31 (2003). Indeed, mandatory detention without a bail

hearing pre-removal order is "a constitutionally permissible part" of the removal process.  *Id*. at 531.

In his concurring opinion in *Demore*, Justice Kennedy noted, "[w]ere there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary to inquire whether the detention is not to facilitate deportation, or to protect against flight or dangerousness, *but to incarcerate for other reasons*."  *Id*. at 532-33 (Kennedy, J., concurring) (emphasis added).  Petitioner has submitted no evidence that the government has detained him for any purpose other than the resolution of his removal proceedings.  Accordingly, his continued detention pursuant to § 1225(b) is lawful.

While Petitioner has been detained since October of 2023, his removal proceedings are at an advanced stage, with an IJ denying his asylum application and his appeal fully briefed and pending at the BIA.  The denial of his asylum application is the Court's "best guide in determining the likelihood that the proceedings will conclude in a final removal order."  *Tahlil v. Moniz*, No. CV 20-10847-PBS, 2020 WL 2560967, at *3 (D. Mass. May 20, 2020).

Neither the government nor Petitioner has unreasonably contributed to the length of his detention as his proceedings have advanced before the Immigration Court and to the BIA.  Petitioner did request several continuances before the Immigration Court and one extension before the BIA, but he does not appear to have acted in a manner to cause unnecessary delay to his proceedings.  Similarly, while the Immigration Court rescheduled Petitioner's asylum hearing on account of court congestion which led to several months passing, there is no suggestion from Petitioner that such docket management was done in a manner to deliberately prolong his proceedings.  *Martinez Lopez v. Moniz*, No. CV 21-11540-FDS, 2021 WL 6066440, at *7 (D.

Mass. Dec. 22, 2021) ("There is no indication that immigration proceedings have simply languished on the docket.").

Further, it is noteworthy that Petitioner's asylum application has been denied and his brief is pending with the BIA, as such, it is conceivable that his removal proceedings will culminate in a final order of removal in the near future. *See Lewis v. Souza*, No. CV 20-10848-PBS, 2020 WL 2543156, at *3 (D. Mass. May 19, 2020) (stating that when "petitioner's appeal is at an advanced stage, with briefing submitted" it weighs against finding of unreasonableness).

If the BIA dismisses Petitioner's appeal, ICE's authority to detain Petitioner will shift from Section 1225(b) to 8 U.S.C. § 1231 which requires detention for purpose of removal from the United States. Alternatively, if Petitioner is successful before the BIA, he could renew his request for parole from ICE on account of changed circumstances that could alleviate his flight risk. As such, the duration of Petitioner's detention has not become unreasonably prolonged so as to warrant release or a bond hearing. His Petition should be denied accordingly.

## CONCLUSION

For these reasons, Petitioner's detention is authorized by statute and does not violate the Constitution. As such, this Court should deny the request to issue a writ of habeas corpus ordering Petitioner's release from ICE custody or that he receive a bond hearing.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated: March 13, 2025          By:    */s/ Mark Sauter*
                                       Mark Sauter
                                       Assistant United States Attorney
                                       United States Attorney's Office
                                       1 Courthouse Way, Suite 9200
                                       Boston, MA 02210
                                       Email: mark.sauter@usdoj.gov

<u>**CERTIFICATE OF SERVICE**</u>

I, Mark Sauter, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

SHONAZAROV FARUKHRUZ
Plymouth County Correctional Facility
Inmate Mail and Parcels
26 Long Pond Road
Plymouth, MA 02360

Dated:  March 13, 2025                    By:      */s/ Mark Sauter*
                                                              Mark Sauter